UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES BRYAN,

             Petitioner,

    -vs-

DAVID ROCK,
SUPERINTENDENT

             Respondent.
_____

**DECISION AND ORDER
No. 09-CV-00802T**

## I.   Introduction

*Pro se* Petitioner James Bryan ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 31, 2006, in New York State, Chemung County Court (Hon. Peter C. Buckley), convicting him, after a jury trial, of Manslaughter in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.15 (1)) and two counts of Driving While Intoxicated (N.Y. Vehicular and Traffic Law ("V&T Law") §§ 1192 (2), (3)). Petitioner was sentenced to an indeterminate term of imprisonment of five to fifteen years for second degree manslaughter and to one year terms of imprisonment for each of the driving while intoxicated counts.  All sentences were set to run concurrent.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.   Factual Background and Procedural History

By Chemung County Indictment No. 2005-291, Petitioner was charged with Manslaughter in the Second Degree (Penal Law § 125.15 (1)) and two counts of Driving While Intoxicated (V&T Law §§ 1192 (2), (3)).  The charges arose from an auto accident that occurred in the early morning hours of February 27, 2005 in the Town of Big Flats, New York.  See Ind. No. 2005-291 dated 09/22/05 at Resp't Ex. A.

### A.   Petitioner's Trial

### 1.   The People's Case

On February 26, 2005, between 5:30 and 7:15 p.m., Petitioner, Daniel Willent ("Willent") and Jared Wingard ("Wingard" or "the victim"), were in Wingard's auto garage, where Petitioner drank three beers.  Trial Trans. [T.T.] 418.  Willent and Petitioner then went to a bar, while Wingard remained at the garage.  Between 7:30 and 10:00 p.m., Willent bought Petitioner three beers.  T.T. 418-419.  The two men then returned to Wingard's garage around 10:30 p.m. and rejoined Wingard.  Willent remained at the garage for fifteen minutes to half an hour, and, during that time, Willent saw Petitioner drink another beer.  T.T. 420.

Petitioner and Wingard then went to another bar.  Between 11:00 and 11:30 p.m., Jonathan Peris ("Peris"), a patron at the bar, observed Petitioner with a pint of beer in his hand. T.T. 451-452.  Petitioner spoke with Peris.  T.T. 453-454.  Kevin Fitch ("Fitch"), an acquaintance of Petitioner's and another patron

-2-

at the bar, also saw Petitioner with a beer. T.T. 476. Petitioner spoke to Fitch about wanting to fight him because Fitch had studied martial arts. T.T. 474. According to Fitch, Petitioner was boisterous and his eyes were "a little glassy." T.T. 455. Petitioner and Wingard left the bar at approximately 1:15 a.m. T.T. 459, 479.

At about 1:30 a.m., Stephen Root ("Root") was getting ready for bed. He heard a car "roaring up the road really, really fast." T.T. 558-559. Root looked out his window and saw a dark-colored Camaro, traveling at approximately 65 to 70 miles per hour, heading in the direction of Route 352. T.T. 560-561, 563. By the sound of the engine, the Camaro seemed to be accelerating. T.T. 562. About seven or eight minutes later, Root heard sirens. T.T. 564.

Brian Deming ("Deming"), who had been stopped on the side of Old Narrows Road and Route 352 a couple of miles from Root's home, saw the Camaro drive past him at approximately 100 miles per hour. T.T. 564-565. Deming heard the car's tires squeal and then heard a loud bang. T.T. 574. Deming flagged down a taxicab and asked the driver to call 911. T.T. 578.

Within five to ten minutes, New York State Police Investigator Chad Deweese, Trooper Nicholas Medina, Paramedic James Allington, and Emergency Medical Technician Cory Rightmire, among others, responded to the crash scene. T.T. 301-302, 383-384, 572. When they arrived, they discovered the Camaro over the embankment. T.T. 303. The front of the vehicle was detached from the passenger

compartment.  T.T. 364, 303.  Petitioner and Wingard, the owner of the vehicle, were belted inside.  Petitioner was in the driver's seat and Wingard was in the passenger seat, and both men were slumped over, unconscious, and had labored breathing.  T.T. 306, 314, 316, 365.  Rescue personnel removed the men from the car and took them to a local hospital.

Wingard, who suffered a fractured spine, a skull fracture, and bleeding in his brain, went into cardiac arrest while being carried up the embankment.  He died of blunt force injuries an hour after the crash.[1]  T.T. 396, 411, 538, 642, 644-645.  When Petitioner was pulled out of the car, his legs were crushed almost to the point of amputation.  T.T. 387.  Paramedic Allington and EMT Rightmire noticed that Petitioner had an odor of alcohol.  T.T. 387, 398-399.

At about 2:00 a.m., New York State Police Investigator Joseph Kelly went to the hospital.  In Investigator Kelly's presence, medical staff drew Petitioner's blood.  T.T. 489, 491, 493, 508-509, 513, 524-529, 536.  Forensic scientist Steven Jodush later reviewed Petitioner's blood specimen and determined that Petitioner's blood alcohol content was .14.  T.T. 661-665, 673.

New York State Trooper John Harder, a collision investigator with about 320 hours of training in collision investigation, investigated the crash.  T.T. 583-584.  Trooper Harder examined the Camaro, including its brakes, and could not find any preexisting

---

[1]

Wingard's alcohol level was .14, and lab results established that he had recently used marijuana or hashish.  T.T. 647-648.

defects.   Trooper Harder saw no damage to the tires or evidence of under or over-inflation.   Trooper Hardy determined that the car was traveling at a minimum of 76 miles per hour when the car began its skid, and that the car traveled 52 feet in the air before colliding with the tree.   T.T. 593-610.

In a letter that Petitioner wrote to trial court Judge Buckley, Petitioner stated, "I am very sorry for the decision I made."   Petitioner also stated in this letter, "I do feel responsible for making the choice that lead to Jared's death." T.T. 691.

### 2.   The Defense's Case

Petitioner testified that he did not remember February 27, 2005.   Rather, he was only able to remember events two days before and two months after that date.   T.T. 721.   Because Petitioner lost his legs and his "brain got messed up" as a result of the crash, he received government benefits.   T.T. 722.   Petitioner explained that his statement to a local television station that he had "screwed up" was based on the fact that the District Attorney and the police had told him that he had killed his friend.   T.T. 723.   Petitioner acknowledged writing the trial court judge a letter wherein he stated, "I do feel I'm responsible for making the choice that led to Jared's death."   However, Petitioner did not recall what "choice" he was referring to in the letter.   T.T. 727-728. Petitioner had simply copied a letter that was written by his girlfriend.   T.T. 728.

Lori Grapes ("Grapes"), who lived on Grove Street in Elmira at the time of the crash, testified that on February 27, 2006, between 12:30 and 2:00 a.m., she was awoken by the sound of screeching tires.  T.T. 709, 713.  Grapes looked out the window and saw two cars drag racing side by side.  T.T. 709-710.  At about 1:30 a.m., Jay Brown ("Brown"), who lived near Grove and Washington Streets at the time of the crash, found a license plate for Wingard's Camaro on the street.  T.T. 701, 704.  Brown turned the license plate over to the Elmira City Police.  T.T. 701.  The next morning, Brown saw tire marks in the grass by the yard near that location.  T.T. 705-706.

### 3.   Verdict and Sentence

On May 5, 2006, the jury found Petitioner guilty as charged. On July 31, 2006, Petitioner was sentenced to an indeterminate term of imprisonment of five to fifteen years for second degree manslaughter and to one year terms of imprisonment for each of the driving while intoxicated counts.  All sentences were set to run concurrent.  T.T. 912-913.

### B.   Petitioner's Direct Appeal

Through counsel, Petitioner appealed his judgment of conviction on six grounds.  See Resp't Ex. A.  Petitioner also filed a *pro se* supplemental brief in which he raised two additional grounds.  See Resp't Ex. B.  The Appellate Division, Third Department affirmed Petitioner's conviction on December 27, 2007.

People v. Bryan, 46 A.D.3d 1219 (3d Dep't 2007) (Resp't Ex. E). Proceeding *pro se*, Petitioner sought leave to appeal the issues raised in his *pro se* supplemental brief on direct appeal.   See Resp't Exs. F, G.  On March 28, 2008, leave to appeal to the New York Court of Appeals was denied.   People v. Bryan, 10 N.Y.3d 809 (2008) (Resp't Ex. H).

   **C.   The Habeas Corpus Petition**

   On or about August 28, 2009, Petitioner filed the instant habeas corpus petition, wherein he seeks relief on the following grounds: (1) that the trial court judge failed to recuse himself; (2) ineffective assistance of pre-trial counsel (attorney Corradini) and trial counsel (attorney Betzjitomir); (3) that the evidence was legally insufficient to establish his conviction for second-degree manslaughter; (4) that the prosecutor improperly denigrated the defense theory in his summation; (5) that the prosecutor usurped the trial court judge's authority by giving legal instructions during the People's summation; (6) that the prosecutor improperly asked Petitioner to assess the credibility of the People's witnesses during Petitioner's cross-examination; (7) that the plea bargaining process was unconstitutional; (8) that the trial court improperly denied Petitioner's request for an adjournment; (9) that he was deprived of his right to be present at a material stage of his trial; (10) that the trial court failed to give a justification charge; and (11) that it was improper for the

jury to have viewed the vehicle from the crash.   See Pet. ¶ 12A-K (Dkt. No. 1).

## III. General Principles Applicable to Habeas Review

### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).   A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).   The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412;   accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the

procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. See <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977).

### C. The Adequate and Independent State Ground Doctrine

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. <u>Id.</u> at 72. Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)); <u>accord</u> <u>Jones v. Stinson</u>, 229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 126 (2d Cir. 1995) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002) (quoting <u>James v. Kentucky</u>, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law." <u>Coleman</u>, 501 U.S. at 750;  <u>see</u> <u>also</u> <u>Levine</u>, 44 F.3d at 126; <u>Grey</u>, 933 F.2d at 121.  A petitioner may establish cause by pointing to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986);  <u>accord</u> <u>Coleman</u>, 501 U.S. at 753.  A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred.  <u>See</u> <u>Reed v. Ross</u>, 468 U.S. 1, 12 (1984).  Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate that failure to do so will result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.

## IV.  Petitioner's Claims

## 1.   Sufficiency of the Evidence Claim (Ground Three)

Petitioner argues, for the first time in the habeas petition, that the evidence was legally insufficient to support his conviction for second-degree manslaughter.  <u>See</u> Pet. ¶ 12C. Because Petitioner failed to properly raise this claim in the state courts, it is unexhausted for purposes of federal habeas review. <u>See</u> 28 U.S.C. § 2254(b)(1)(A).  Nonetheless, as discussed below, the Court deems the claim exhausted but procedurally defaulted.

In this case, Petitioner failed to raise his sufficiency of the evidence claim in the state courts.  If he were to attempt to do so now, he would be procedurally barred from doing so. Petitioner cannot return to state court because he has already

taken the one direct appeal and one application for leave to appeal to the New York Court of appeals to which he is entitled. See N.Y. Court R. § 500.20. Moreover, collateral review, by way of a motion for vacatur, is also foreclosed because the claim is a matter of record which could have been raised on direct appeal, but unjustifiably was not. See N.Y. Crim. Proc. Law ("CPL") § 440.10 (2)(c) (barring review if a claim could have been raised on direct review). Because Petitioner no longer has remedies available in the state courts, his claim is deemed exhausted and procedurally defaulted. See Grey, 933 F.2d at 120.

Petitioner's procedurally defaulted claim may be reviewed by this Court only if he can demonstrate cause for the default and actual prejudice resulting therefrom, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Murray, 477 U.S. at 485, 496. Petitioner has not alleged cause and prejudice to overcome the procedural default, nor has he endeavored to demonstrate that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, Petitioner's sufficiency of the evidence claim is procedurally defaulted, and dismissed on that basis.

**2.    Trial Judge Failed to Recuse Himself (Ground One)**

Petitioner contends, as he did in his *pro se* appellate brief, that the trial court judge should have recused himself because he

was familiar with the victim's family.[2]   See Pet. ¶ 12A.   The
Appellate Division, Third Department rejected this claim on a state
procedural ground, pursuant to CPL § 470.05 (2), because Petitioner
failed to properly preserve the issue for appellate review.   See
Bryan, 46 A.D.3d at 1220.   Consequently, as discussed below, this
claim is procedurally defaulted from review by this Court.

A federal court may not review a question of federal law
decided by a state court if the state court's decision rested on a
state law ground that is independent of the federal question and
adequate to support the judgment.   See Coleman, 501 U.S. at 751.
Here, the state court relied on New York's preservation rule
(codified at CPL § 470.05 (2)) to deny Petitioner's claim because
it had not been properly preserved for appellate review.   See
Bryan, 46 A.D.3d at 1220.   The Second Circuit has determined that
CPL § 470.05 (2) is an independent and adequate state procedural
ground.   See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999);
Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).   The Appellate
Division, Third Department's reliance on New York's preservation
rule is an adequate and independent state ground which precludes
this Court's review of Petitioner's claim.

As discussed above, however, this Court may reach the merits
of Petitioner's claim, despite the procedural default, if he can

---

[2]

The record reflects that, prior to trial, a conference was conducted in
chambers wherein the trial court judge disclosed that he was familiar with the
victim's family.  The trial court judge and the parties' attorneys were present
at this conference; Petitioner was not.  See App. at Resp't Ex. A.

demonstrate cause and prejudice, or that failure to consider the claim will result in a miscarriage of justice. Petitioner does not specifically allege cause for the default; however, he does raise ineffective assistance of (pre-trial) counsel as a stand-alone claim. See Pet. ¶ 12B. A claim of ineffective assistance of counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991); United States v. Frady, 456 U.S. 152, 168 (1982). However, in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation. McCleskey, 499 U.S. at 494 ("Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default."). Here, Petitioner's stand-alone ineffective assistance of counsel claim (related to his pre-trial counsel) is meritless (see Section "IV, 3" below). Consequently, he cannot establish "cause" to excuse the procedural default. Further, to the extent Petitioner's assertions that "the judge's bias resulted in the denial of a continuance" and that "[the judge] allowed the People impermissive latitude in giving the jury instruction on how to deliberate" (Pet. ¶ 12A) could be construed as an attempt to show actual prejudice, such an attempt fails to the extent said assertions are based entirely on conjecture and speculation. Further, Petitioner has failed to demonstrate that this Court's failure to review the claim will

result in a fundamental miscarriage of justice.  Accordingly, the claim is procedurally defaulted, and dismissed on that basis.

**3.   Ineffective Assistance of Pre-Trial Counsel (Ground Two)**

In ground two of the petition, Petitioner argues, as he did on direct appeal, that Chemung County Public Defender Paul R. Corradini, who represented Petitioner before trial, was ineffective.  <u>See</u> Pet. ¶ 12B.  Specifically, Petitioner contends that: (1) counsel failed to conduct an investigation or seek expert witnesses to present a defense or introduce the viable defense that there was a more reasonable cause for the collision other than the fact that Petitioner was driving drunk and at a high rate of speed; and (2) counsel failed to inform Petitioner of an in-chambers conference conducted prior to trial wherein the trial court judge admitted to knowing the decedent.  <u>See</u> Pet. ¶ 12B.  The Appellate Division, Third Department rejected this claim on the merits.  <u>See</u> <u>Bryan</u>, 46 A.D.3d at 1221.  As discussed below, this claim is meritless.

To demonstrate a violation of his Sixth Amendment right to the effective assistance of counsel, a petitioner must show that his attorney's representation was deficient in light of prevailing professional norms and that prejudice inured to him as a result of that deficient performance.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  To satisfy the first prong, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced

a just result[.]" Id. at 686.  As to the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional" performance, the result of the trial would have been different.  Id. at 694.  Petitioner cannot meet this standard.

Petitioner contends that his pre-trial attorney Paul R. Corradini was ineffective because he allegedly failed to conduct an investigation or seek expert witnesses to present a defense or introduce the viable defense that there was a more reasonable cause for the collision other than the fact that Petitioner was driving drunk at a high rate of speed.  This claim is meritless.  The record before this Court reflects that attorney Corradini, a veteran criminal lawyer with thirty years of experience, filed an omnibus motion and demands to produce prior to trial.  See Resp't Ex. D.  Furthermore, contrary to Petitioner's contention, the record reflects that attorney Corradini "retained an accident reconstruction specialist and sent to him a copy of the documents that he requested and the photographs." Mins. of 11/15/05 3-4 at Resp't Ex. D. Counsel also requested additional materials from the District Attorney for the defense expert.  Mins. of 11/15/05 4 at Resp't Ex. D.  Moreover, counsel obtained an adjournment to have sufficient time to discuss a plea offer with Petitioner, and the record reflects that counsel met with Petitioner to discuss that offer.  Mins. of 01/23/06 3-5 at Resp't Ex. D; Mins. of 02/21/06 3

at Resp't Ex. D.  When Petitioner's family retained attorney Susan Betzjitomir, just a few days prior to trial, and Petitioner requested that she try the case, attorney Corradini, with Petitioner's consent, served as a defense consultant throughout the trial.  Mins. of 04/28/06 12-13, 19.  Accordingly, the Court finds no basis for finding that attorney Corradini's representation was constitutionally deficient.  Moreover, Petitioner makes no showing that, but for attorney Corradini's alleged errors, there is a reasonable probability that the outcome of his trial would have been different.

To the extent Petitioner argues that attorney Corradini was ineffective because he did not inform Petitioner of an in-chambers conversation that occurred prior to trial wherein the trial judge admitted that he knew the victim, this contention is also meritless.  Even, *assuming arguendo*, that Petitioner's counsel had not in fact discussed the in-chambers conference with Petitioner, Petitioner makes no showing as to how the alleged failure effected his ability to defend himself.  To this extent, Petitioner has not and cannot show prejudice under the second prong of Strickland.

Accordingly, the state court's adjudication of this claim did not contravene or unreasonably apply settled Supreme Court law and the claim is therefore dismissed as meritless.

**4. Petitioner's Remaining Claims are Unexhausted but Deemed Exhausted and Procedurally Defaulted**

With respect to Petitioner's remaining claims -- the remaining portion of ground two[3] and grounds four through eleven -- said claims are unexhausted because they were not properly raised in the state courts.  See 28 U.S.C. § 2254(b)(1)(A).  Consequently, as discussed below, they are deemed exhausted but procedurally defaulted.

To fulfill the exhaustion requirement, a habeas petitioner must have afforded the state courts a fair opportunity to consider his federal claim.  Picard v. Connor, 404 U.S. 270 (1971).  This means that a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition.  See Grey, 933 F.2d at 119. Here, Petitioner raised each of the aforementioned claims (the portion of ground two related to attorney Betzjitomir and grounds four through eleven) in his main appellate brief.  See Resp't Ex. A.  However, Petitioner did not seek leave to appeal on any of these grounds; rather, in his *pro se* leave application, he requested that the Court review only the two issues raised in his *pro se* appellate brief, to wit: judicial misconduct as a result of

---

[3]
At ground two of the petition, Petitioner claims that both pre-trial attorney Corradini and trial attorney Betzjitomir were ineffective.  The portion of this claim related to attorney Corradini is exhausted and meritless (see discussion at Section "IV, 3" above).  See Pet. ¶ 12B; Pet'r Mem. of Law at 12. The portion of this claim related to attorney Betzjitomar is unexhausted and procedurally defaulted, as discussed in further detail in this section.

the trial judge's failure to recuse himself, and ineffective assistance of pre-trial counsel (attorney Corradini) based upon counsel's failure to investigate the case and to advise him of the pre-trial in-chambers conference. Accordingly, the claims are all unexhausted.

The claims, however, must be deemed exhausted because Petitioner would face an absence of corrective process were he to return to state court in an attempt to exhaust them. State appellate review is no longer available to him; he cannot again seek leave to appeal the claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. See N.Y. Court Rules § 500.20. Moreover, collateral review of the claims is also barred.  See CPL § 440.10 (2)(a) (barring review of a claim that was previously determined on the merits on appeal); CPL § 440.10 (2)(c) (barring review of a claim when it could have been raised on direct review).  See Grey, 933 F.2d at 120-21.  The state procedural rules that give rise to the constructive exhaustion of these claims also render them procedurally defaulted.  See, e.g., Ramirez v. Att'y General of N.Y., 280 F.3d 87, 94 (2d Cir. 2001) ("Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.") (citing Grey, 933 F.2d at 120-21).

As discussed above, this Court may reach the merits of Petitioner's claim, despite the procedural default, if he can make a showing of the requisite cause and prejudice. Liberally construing Petitioner's pleadings, he has alleged prejudice for some of the instant claims; nonetheless, he has failed to make a showing (or even allege) cause for the default. Such failure precludes this Court's review of the claims. See Murray, 477 U.S. at 496 (adhering to the cause and prejudice test "in the conjunctive") (quotation omitted). Moreover, he has failed to demonstrate that this Court's failure to review the claims will result in a miscarriage of justice. Thus, the remaining portion of ground two (related to attorney Betzjitomir) and grounds four through eleven are dismissed as procedurally defaulted.

## V.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and

therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      October 5, 2011
            Rochester, New York